```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Ben's Auto Body, Inc.**

    **v.**                                    Case No. 07-cv-417-PB
                                                 Opinion No. 2009 DNH 193

**Progressive Direct**
**Insurance Company and**
**Progressive Casualty**
**Insurance Company**

## MEMORANDUM AND ORDER

Ben's Auto Body, Inc. has sued Progressive Direct Insurance Company and Progressive Casualty Insurance Company (collectively "Progressive"). Progressive moves for summary judgment on Count III of Ben's' complaint, which alleges tortious interference with contractual relations and intentional interference with prospective contractual relations. For the reasons set forth below, I grant Progressive's motion.

### I. BACKGROUND

Ben's alleges that Progressive has tortiously interfered with its relationships with a number of current and prospective customers by "attempting to induce [them] to no longer conduct business with [Ben's] by making untrue and disparaging statements

about [Ben's], including but not limited to statements indicating that [Ben's] overcharges for repairs." (Pet. for Declaratory J., Injunctive Relief and Money Damages (hereinafter "Complaint"), Doc. No. 1-2, ¶¶ 26-27.)[1] The relevant current and prospective customers fall into three categories: (1) those who had their automobiles repaired at Ben's despite receiving letters from Progressive that said that Ben's charged more than the "going rate" for labor; (2) those who brought their automobiles to Ben's initially but, after speaking with Progressive, moved their automobiles to other shops; and (3) those who brought their automobiles to Ben's for estimates but then never made follow-up appointments. (See Compl., Doc. No. 1-2, ¶¶ 7-8, 10-11; Mem. of Law in Supp. of Pl.'s Objection to Mot. for J., Doc. No. 47-2, at 8.) Progressive responds by arguing, among other things, that its contacts with Ben's' customers were not improper, and thus

---

[1] Ben's' complaint pled "tortious interference with business relationships," which "resembles two torts recognized in New Hampshire: tortious [or intentional] interference with contractual relations, and intentional interference with a prospective contractual relationship." (Compl., Doc. No. 1-2, at 6); Ben's Auto Body, Inc. v. Teitelbaum, 2008 DNH 208, 7 (D.N.H. 2008) (internal quotation omitted). Ben's' subsequent materials make clear that Ben's is alleging both torts. (See, e.g., Mem. of Law in Supp. of Pl.'s Objection to Mot. for J., Doc. No. 47-2, at 2.)

that its behavior was not tortious.  (See Def.'s Reply in Further Supp. of Mot. for J., Doc. No. 49, at 9.)

The first category of customers includes Tara Kleintop and Adam Hewitt, both of whom planned to have their vehicles repaired at Ben's.  (See Compl., Doc. No. 1-2, ¶¶ 7, 10.)  Progressive sent each of them a letter that stated that "Progressive and [Ben's] [were] unable to come to an agreed price for the [necessary] repairs" because Ben's was "unwilling to accept the going labor rate of $42.00 per hour."  (Id. ¶¶ 7, 10.)  The letters included the following disclosure:

> New Hampshire law allows that our payment for repair cost may be limited to the fair and reasonable price in the area charged by repair shops or facilities providing similar services with the usual and customary guarantees as to materials and workmanship.  Upon your request, we shall furnish a written disclosure of the factual basis for our determination as to whether the estimate is fair and reasonable.  If you are our insured and disagree with our determination of the amount of loss, you are entitled to exercise the appraisal provision of your policy.  In all instances, you are entitled to use the repair facility of your choice.

Id. ¶¶ 8, 11.  The letters also each provided the names of two repair shops that were willing to repair the automobiles for Progressive's estimated price.  See id.  Finally, the letters requested that Kleintop and Hewitt consider the suggested repair

shops but noted that they were "under no obligation to do so." Id. Despite Progressive's letters, both Kleintop and Hewitt had their automobiles repaired at Ben's. (See Mem. of Law in Supp. of Pl.'s Objection to Mot. for J., Doc. No. 47-2, at 8.)

Ben's alleges that Progressive misled Kleintop and Hewitt and interfered with Ben's' relationships with them when it claimed that the "going labor rate" was $42 per hour when the actual rate was higher. (See Compl., Doc. No. 1-2, ¶¶ 7-14, 26-28; Mem. of Law in Supp. of Pl.'s Objection to Mot. for J., Doc. No. 47-2, at 6.) Furthermore, Ben's claims that Progressive acted improperly (and in violation of New Hampshire Revised Statutes Annotated 417:4XX(c)) by allegedly calculating the "going rate" based on "the lower negotiated rates that certain [direct repair program, or DPR] shops accept from certain insurance companies for repairs" rather than based on the prevailing price that repair shops charge the general public. (Mem. of Law in Supp. of Pl.'s Objection to Mot. for J., Doc. No. 47-2, at 6-7.)[2]

---

[2] A New Hampshire insurer may not require an individual to use the insurer's recommended repair shop, but if the individual uses a non-recommended shop, "the insurer may limit payment for such work based on the fair and reasonable price in the area by repair shops or facilities providing similar services with the usual and customary guarantees as to materials and workmanship."

Ben's also alleges that Progressive interfered with its relationships with nineteen potential customers in a second category, who "had their vehicles initially brought to [Ben's]" but then, "after speaking with a representative of Progressive[,] had their vehicles moved to another shop without explanation." (Berounsky Aff., Doc. No. 47-3, ¶ 2.[3])  Ben's provides specific additional information about only two of these potential customers:  Kathleen Bender and Robert Ponchak.  (See id.) Michael Berounsky, Jr., the Vice President of Ben's, claims to "have personal knowledge that Mike Sanville from Progressive steered [Kathleen Bender]" away from Ben's.  (Id.)  Berounsky also claims that "Robert Ponchak's vehicle . . . was moved . . . because Progressive would not pay [Ben's] labor rate."  (Id.)

---

N.H. Rev. Stat. § 417:4XX(c).  "If an independent repair shop or facility and an insurer are unable to agree on a price, then for the purposes of this section 'fair and reasonable price' shall mean the price available from a recognized, competent and conveniently located, <u>independent</u> repair shop or facility . . . ."  Id. (emphasis added).

[3] Progressive argues that this court should disregard the affidavits that Ben's submitted with its objection to the motion for judgment because (1) they are sham affidavits, (2) they lack proper foundation, and (3) Ben's failed to fulfill certain discovery obligations.  (See Def.'s Reply in Further Supp. of Mot. for J., Doc. No. 49, at 3-8.)  I assume, without deciding, that I may consider the affidavits when ruling on Progressive's motion for judgment.

Although Ben's does not include another customer, Timothy Donnell, in this category, I include him for purposes of analysis because he also initially brought his vehicle to Ben's but then moved it to another shop after speaking with Progressive. Donnell's affidavit states that he had his car repaired "at one of Progressive's preferred shops" after "Progressive informed [him] . . . that Ben's . . . is not one of Progressive's preferred shops and . . . that Progressive does not allow its customers to get their vehicles repaired there."  (Donnell Aff., Doc. No. 47-4, ¶¶ 5-6.)  Progressive also allegedly told Donnell that if he "persisted in [his] desire to get [his] car repaired at Ben's . . . [he] would have to pay any and all costs that Progressive would not cover."  (Id. ¶ 5.)

Ben's also alleges that Progressive interfered with its relationships with potential customers in a third category, twenty of whom "brought their vehicles to Ben's[,] employed Ben's to conduct damage estimates on their vehicles[,] and then never scheduled an appointment after making contact with Progressive." (Berounsky Aff., Doc. No. 47-3, ¶ 2.)  Ben's provides no further information about these twenty potential customers.[4]

---

[4] I assume here that Ben's' general allegations apply to every customer in each of the three categories.  Ben's alleges

## II. **STANDARD OF REVIEW**[5]

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence submitted in support of the motion for summary judgment must be considered in the light most favorable to the nonmoving party, indulging all reasonable inferences in its favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the

---

that Progressive "coerc[ed] and intimidat[ed]" customers and that it "intentionally misrepresented that [Ben's] [had] a higher labor rate than other area repair shops, hence implying that [Ben's] overcharges for repairs." (Pl.'s Objection to Mot. for J., Doc. No. 47, ¶ 3.) Ben's also alleges that Progressive "misrepresented the going labor rates in the area" not only through letters, but also "via other verbal communications." (Mem. of Law in Supp. of Pl.'s Objection to Mot. for J., Doc. No. 47-2, at 5.)

[5] Progressive has moved for judgment on the pleadings under Rule 12(c), or, alternatively, for summary judgment under Rule 56(b). I consider matters outside the pleadings here, and thus I apply the Rule 56 standard.

nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323. The opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## III. ANALYSIS

Both intentional interference with contractual relations and intentional interference with prospective contractual relations require that the defendant's interference be improper. See, e.g., Roberts v. General Motors Corp., 643 A.2d 956, 961 (N.H. 1994) ("Only improper interference is deemed tortious in New Hampshire."); Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 229 F. Supp. 2d 70, 75 (D.N.H. 2002), aff'd 374 F.3d 23 (1st Cir. 2004) (discussing, in the context of a claim for interference with prospective contractual relations, whether defendant's actions constituted "improper conduct"); Restatement (Second) of


Torts § 767 cmt. a (1979) (to be held liable for interference with existing or prospective contractual relations, the defendants interference must "be both intentional and improper").

Here, Ben's has not produced sufficient evidence to permit a reasonable factfinder to conclude that Progressive's actions were improper. Ben's presents only two pieces of evidence that could possibly create a genuine issue as to whether Progressive behaved improperly: the letters that Progressive sent to Kleintop and Hewitt, and Donell's affidavit. Progressive's letters merely inform their recipients that Ben's and Progressive have not agreed on a price, make the disclosures Progressive believed were required by the New Hampshire insurance regulations,[6] and identify other repair shops where the customers would be fully covered. (See Def.'s Mem. of Law in Supp. of Mot. for J. Ex. 5, Doc. No. 42-6, and Ex. 6, Doc. No. 42-7.) The letters also emphasize that customers are not required to use Progressive's suggested repair shops. (See id.) A reasonable factfinder could not possibly construe their content as improper.

---

[6] Progressive may have cited an outdated regulation in its letters, but this mistake would not constitute improper interference with contractual relations. See footnote 7, infra.

Ben's appears to believe that the letters Progressive sent to Hewitt and Kleintop were improper because (1) they intentionally misstated the going labor rate and (2) they did not inform customers that the going labor rate is determined based on the rates charged at independent shops.  (See Mem. of Law in Supp. of Pl.'s Objection to Mot. for J., Doc. No. 47-2, at 6-7.) Regarding Ben's' first argument, Ben's presents insufficient evidence that the "going labor rate" was not, in fact, $42 per hour or that Progressive intentionally misrepresented this rate. Ben's alleges that Progressive "us[ed] negotiated labor rates, not independent labor rates or the rates . . . an independent repair shop charged to the general public, to determine a fair and reasonable price for repairs."  (Compl., Doc. No. 1-2, ¶ 22.) The only evidence, however, that Ben's proffers in support of this conclusory statement is that Ben's charges $45 per hour for labor and that three other shops Progressive recommended in its letters charge $45 and $46 per hour for labor to the general public.  (See id. ¶¶ 9, 12-14.)  This evidence is not sufficient to permit a reasonable finder of fact to conclude either that the "going rate" was, in fact, more than $42 per hour, or that Progressive intentionally misrepresented the rate.

-10-

Regarding Ben's' second argument, it is true that, if a customer decides to use an independent repair shop rather than a shop suggested by an insurer, New Hampshire law allows the insurer to limit payment to a "fair and reasonable price," which is defined as "the price available from a recognized, competent and conveniently located, independent repair shop or facility." N.H. Rev. Stat. § 417:4XX(c) (emphasis added). It is also true that Progressive did not state in its letter that a "fair and reasonable price" would be defined with reference to an independent repair shop. This omission, however, is not sufficient to constitute improper interference. Ben's presents no evidence that Progressive intended to mislead customers by using the language it used, which was drawn from an outdated New Hampshire insurance regulation.[7] Furthermore, Progressive's

---

[7] It appears that Progressive erred by quoting rule Ins 1001.03(f) in its letters rather than rule Ins 1002.17(g). The old version of Ins 1001.03, which Progressive quoted, expired on May 24, 2007, see CNHR Ins 1001.03, shortly before Progressive sent the two letters at issue here, dated September 7, 2007 and August 30, 2007 (see Def.'s Mem. of Law in Supp. of Mot. for J. Ex. 5, Doc. No. 42-6, and Ex. 6, Doc. No. 42-7). On July 1, 2007, the new rule Ins 1001.03 (with no subsection (f)) became effective, as did rule Ins 1002.17(g). See CNHR Ins 1001.03, 1002.17. The new 1001 series of rules addresses only non-property and non-casualty insurance, while the new 1002 series addresses property and casualty insurance. See CNHR Ins Parts 1001, 1002. The current version of the relevant rule, Ins 1002.17(g), requires an insurer who cannot agree on a price with

language would not mislead a reasonable consumer because such a consumer would not assume that a "fair and reasonable price" would be <u>less</u> than the true "going rate" for a repair simply because Progressive left out any reference to "independent" repair shops.

The Donnell affidavit, like the letters to Kleintop and Hewitt, does not establish improper interference.  When Donnell told Progressive that he had an estimate from Ben's and wanted to have Ben's fix his vehicle, a representative from Progressive said that "Progressive does not honor [Ben's'] estimates[,] that [Ben's] is not one of Progressive's preferred shops[,] and therefore that Progressive does not allow its customers to get their vehicles repaired there."  (Donnell Aff., Doc. No. 47-4, ¶¶ 3, 5.)  If this were the entirety of Progressive's statement,

---

an independent repair shop selected by a customer to disclose to the customer that "New Hampshire law provides that [the insurance company's] payment for repair cost may be limited to the price available from a recognized, competent and conveniently located <u>independent</u> repair shop or facility."  CNHR Ins 1002.17(g) (emphasis added).  Progressive did not include this language in its letters.
    Ben's does not specifically argue that use of the outdated language constituted improper interference, nor, based on my own analysis, was it improper, because the old rule was substantially similar to the new one.  Progressive acted in compliance with the spirit of the new rule, and with the underlying New Hampshire statute, when it made the disclosure required by the expired rule.

Ben's might have a claim for improper interference. However, Donnell adds that the representative "informed [him] that if [he] persisted in [his] desire to get [his] car repaired at [Ben's], [he] would have to pay any and all costs that Progressive would not cover." (Id. ¶ 5.)  Thus, it appears that Progressive did not convey the message that Donnell was prohibited from having his vehicle repaired at Ben's, but merely communicated that Progressive might not pay the full cost of repairs at Ben's. Thus, these statements do not amount to improper interference.

## IV.   CONCLUSION

For all of the foregoing reasons, I grant Progressive's motion for judgment on the pleadings (Doc. No. 41).  The clerk is directed to enter judgment and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

December 18, 2009

cc:   Joseph P. Geiger, Jr., Esq.
      Lauren S. Irwin, Esq.
      Earl L. Kalil, Jr., Esq.
      Christopher E. Ratte, Esq.